IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Amalgamated Transit Union Local 241 and Amalgamated Transit Union Local 308, | ) ) ) | |
| Plaintiffs, | ) ) | No. 15-cv-2775 |
| v. | ) ) | |
| Chicago Transit Authority, a municipal corporation, | ) ) ) | |
| Defendant. | ) ) | |

# COMPLAINT

1. Plaintiffs Amalgamated Transit Union (ATU) Local 241 and ATU Local 308 represent, respectively, the bus transportation workers and rail transportation workers employed by the Chicago Transit Authority (CTA). Plaintiffs bring this complaint pursuant to 42 U.S.C. § 1983 to enforce their rights to freedom of speech and freedom of association under the First Amendment of the United States Constitution as those rights are incorporated by the Fourteenth Amendment. Plaintiffs allege that the Chicago Transit Authority (CTA) is violating their own First Amendment rights and those of their members under color of state law by prohibiting them from distributing leaflets to their members relating to members' employment and welfare in certain areas of CTA property without a reasonable justification for such prohibition. Plaintiffs seek preliminary and permanent injunctive relief against any such prohibition.

2. The CTA has previously allowed Plaintiffs and their members to distribute materials, including materials related to the terms and conditions of their employment and political materials, in its break rooms on non-working time in a manner that does not interfere with work or CTA passengers.

1

3. The CTA is now prohibiting Plaintiffs from distributing materials that relate both to the terms and conditions of the employment of their members and to other subjects that have been discussed in the CTA break rooms in the past because Plaintiffs' materials now advocate the replacement of Mayor Rahm Emanuel by Jesús García in the upcoming election and the replacement of CTA's management, including its President, by a different Mayor.

4. Accordingly, in violation of the First Amendment as incorporated by the Fourteenth Amendment, the CTA has now imposed on Plaintiffs' expressive activity a new and unreasonable content-based restriction that is inconsistent with the use of the break rooms in the past as forums for speech of all kinds on political and other subjects, including subjects of legitimate concern to Plaintiffs' members.

5. Moreover, by aiming this change in the previously expressed and enforced policy at materials that advocate for the replacement of the current Mayor of Chicago and President of CTA, CTA has engaged in an unreasonable and unconstitutional viewpoint-based restriction on Plaintiffs' speech in CTA break rooms that have previously served as public forums for discussion of a wide range of subjects.

**Parties**

6. Plaintiff ATU Local 241 is a labor organization whose membership includes, but is not limited to, bus transportation workers employed by the CTA. Local 241 brings this claim both on its own behalf and as an associational representative of its members.

7. Plaintiff ATU Local 308 is a labor organization whose membership includes rail transportation workers employed by the CTA. Local 308 brings this claim both on its own behalf and as an associational representative of its members.

8. The Chicago Transit Authority is a body politic and municipal corporation with its principal office in the City of Chicago. *See* 70 ILCS 3605/3 & 5.

**Jurisdiction and Venue**

9.   The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, namely the First Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983.

10.   Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 because the Defendant is located in this district and all the events and omissions giving rise to the claims occurred in this district.

**Facts**

11.   Plaintiffs wish to distribute certain materials, including but not necessarily limited to the leaflet attached hereto as Exhibit A, to their members in certain break rooms on CTA property.

12.   The materials Plaintiffs wish to distribute provide their members with information regarding the impact that the upcoming election for Mayor of the City of Chicago may have on the terms and conditions of their employment by CTA.

13.   The materials encourage members to vote for Jesús "Chuy" García, the candidate that Plaintiffs have endorsed, because of the direct impact that they believe the election of Mr. García will have on the terms and conditions of their members' employment.

14.   CTA has informed Plaintiffs that its policy is to forbid the distribution of such materials, including Exhibit A, in the break rooms.

15.   Rule 21 of CTA's General Rule Book governing all employees states as follows:

> Canvassing, soliciting, circulating petitions, distribution of material or the collection of money by or from employees on Authority property is prohibited without written permission of the Authority. Notwithstanding the foregoing, canvassing, soliciting, circulating petitions or distribution [of] material is not prohibited and may be conducted without permission of the Authority if such activity satisfies all of the following criteria:

      1.    it does not take place during working time.

      2.    circulation of petitions and distribution of material may only take place in non-working areas of the Authority's property, and

      3.    it does not interfere with normal working activities of employees or inconvenience passengers.

16.     The break rooms are non working areas, for use of employees who are off duty and on break.

17.     Accordingly, by the terms of Rule 21, CTA has expressly opened "non-working areas" of its properties up as forums for the distribution of any material, so long as that distribution does not take place during working time and does not interfere with the normal working activities of employees or inconvenience passengers.

18.     In the past, Plaintiffs and others have distributed materials to their members in these same break rooms with the knowledge of CTA, but without requesting written permission.

19.     Therefore, through its past practice, CTA has acknowledged that these break rooms constitute non-working areas.

20.     For instance, Plaintiffs have recently distributed "get out the vote" literature in the break rooms, attached hereto as Exhibit B.

21.     Plaintiffs have also circulated sign-up sheets for members to volunteer to help the union with its political efforts in the upcoming mayoral election.

22.     Members of both Locals have distributed campaign materials for internal union elections in the break rooms, including the one attached hereto as Exhibit C.

23.     Non-CTA employees working for political campaigns have engaged in open campaigning and distribution of campaign literature in these break rooms and in other areas of CTA property as well.

24. For instance, people working for former Mayor Richard M. Daley distributed campaign material in the break rooms when Mayor Daley was campaigning.

25. Former Governor Rod Blagojevich frequently campaigned on CTA property, including in the break rooms, where he shook hands with Plaintiffs' members.

26. On Friday, March 27, 2015, less than two weeks before the April 7 run-off election, Mayor Emanuel held a press conference in a CTA bus garage with CTA employees, CTA President Forrest Claypool, and others to announce the expansion of CTA's "Second Chance" internship program.

27. That press conference took place in a work area of the bus garage, the bus bay, rather than in a break room.

28. At least one person at that press conference, Congressman Bobby Rush, who has publicy endorsed Rahm Emanuel's mayoral campaign, was wearing a Rahm Emanuel campaign button during the press conference.

29. CTA also acknowledges the rights of Plaintiffs' members to engage in union activities for their mutual aid and benefit, and acknowledges that those rights include the right to distribute political campaign materials.

30. However, CTA has now, through the office of its General Counsel, explicitly taken the position that the right to engage in union activities for their mutual aid and benefit does not extend to political campaign materials unless they relate to union officer elections within the Plaintiff Locals.

31. CTA has also now for the first time taken the position, through the office of its General Counsel, that these break room are not "non-working areas" and that Rule 21 therefore requires Plaintiffs to obtain written permission before distributing materials.

5

32. CTA has, through the office of its General Counsel, refused to give such written permission for the distribution of Exhibit A because CTA believes that its "dominant message" is to encourage members to vote for a specific political candidate.

33. The CTA is governed by a Board of Directors consisting of seven members, four of whom are appointed by the Mayor of the City of Chicago. 70 ILCS 3605/20.

34. The Mayor also has the power to remove the mayoral appointees to the Board. *Id.*

35. The CTA Board has the legal responsibility for selecting the Executive Director or "President" of the CTA, the General Counsel of the CTA, as well as its other officers. 70 ILCS 3605/27.

36. CTA's President is responsible for and participates directly in collective bargaining with the Plaintiffs.

37. The Mayor of the City of Chicago therefore has substantial control over the management of the Chicago Transit Authority as a matter of law.

38. Moreover, as a matter of fact, the Mayor's influence is even more significant. As a matter of custom and practice, given the Mayor's legal authority to appoint and remove Board members, the Mayor of Chicago has personally selected the CTA President.

39. For instance, while Mayor Emanuel was not sworn in until May 16, 2011, he announced his selection of Forrest Claypool as the new President of the CTA in April 2011.

40. The Mayor has both statutory and informal or de facto authority to determine the identity of the CTA president.

41. Accordingly, the identity of the CTA's President who will conduct collective bargaining on the wages, hours and working conditions of the members of the plaintiff Locals will be determined by the outcome of the Mayoral election to be held on April 7, 2015.

42. The Mayor also has substantial control over the infrastructure of Chicago's streets and transportation systems, which affect the terms and conditions of employment of Plaintiffs' members.

43. For example, Mayor Emanuel championed and signed into law the institution of a system of red-light cameras in Chicago that have led to discipline of bus drivers represented by Plaintiff Local 241 and have a significant effect on the terms and conditions of their employment.

44. Therefore, in myriad ways, the outcome of the upcoming Mayoral election on April 7, 2015 will have an immediate and direct impact on labor-management relations between Plaintiffs and the Defendant and on the wages, hours and working conditions of Plaintiffs' members.

## COUNT I
## 42 U.S.C. § 1983
## Violation of First and Fourteenth Amendments

45. By the acts set forth above, CTA has previously opened the break rooms at issue up as public forums where Plaintiffs' members can speak and distribute materials of any kind so long as they do so on non-working time and in a manner that does not interfere with work or CTA's passengers.

46. At the very least, CTA has previously opened the break room at issue up as forums for speech, including the distribution of materials, by Plaintiffs' members regarding union business and politics, their mutual benefit, and the terms and conditions of their employment by CTA.

47. Chicago's upcoming mayoral run-off election will have a substantial impact on the terms and conditions of the employment of Plaintiffs' members.

7

48. By prohibiting Plaintiffs from distributing materials related to the mayoral election, including Exhibit A, even during non-working time and in a manner that does not interfere with CTA's work or passengers, the CTA has imposed an unreasonable content-based restriction on their speech, in violation of their rights under the First Amendment as it is incorporated by the Fourteenth Amendment to apply to the State of Illinois and its instrumentalities.

49. CTA has explicitly imposed this prohibition as a matter of policy through its General Counsel.

50. CTA has done so under color of state law, and has indeed referenced state law repeatedly as the source of authority of its policy.

51. By changing its previous policy regarding the distribution of materials, including political materials, in its break rooms, in order to prohibit materials that advocate for the replacement of the current Mayor of Chicago and President of CTA, CTA has engaged in an unreasonable and unconstitutional viewpoint-based restriction on Plaintiffs' speech.

WHEREFORE, Plaintiffs respectfully pray that the Court:

A. Enter judgment in favor of Plaintiffs and against Defendant;

B. Declare that Plaintiffs may distribute Exhibit A and similar materials related to the terms and conditions of the employment of their members in Defendant's break rooms;

C. Preliminarily and permanently enjoin Defendant from prohibiting Plaintiffs or their members from distributing such materials or from disciplining Plaintiffs' members for distributing such materials in Defendant's break rooms; and

D. Grant Plaintiffs' their attorneys' fees and costs.

**Jury Demand**

Plaintiffs hereby demand a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated: March 31, 2015                          By:    s/ Sean Morales-Doyle
                                                                       One of Plaintiffs' Attorneys

Thomas H. Geoghegan
Michael P. Persoon
Sean Morales-Doyle
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511